Jones, J.
(dissenting). I would reverse the order of the Appellate Division and annul the determination of the State Tax Commission,'
The Tax Commission’s determination that the liability of Wurlitzer Company (Wurlitzer) for franchise tax purposes should be computed by including Wurlitzer and Wurlitzer Acceptance Corporation (Acceptance) in a combined report was based on a claim that the Tax Commission has discretionary authority to do so under applicable provisions of the Tax Law and of regulations promulgated thereunder. Specifically reliance was placed on subdivision 4 of section 211 of the Tax Law which provides in pertinent part: ‘ ‘ In the discretion of the tax commission, any taxpayer, which owns or controls either directly or indirectly substantially all the capital stock of one or more other corporations * * * may be required or permitted to make a report on a combined basis covering any such other corporations and setting forth such information as the tax commission may require; provided, however, that no combined report covering any corporation not a taxpayer shall be required unless the tax commission deems such a report necessary, because of inter-company transactions or some agreement, *107 understanding, arrangement or transaction referred to in subdivision five of this section, in order properly to reflect the tax liability under this article.” This section was read by the Tax Commission to authorize it to require the inclusion of a non-taxpayer (here Acceptance) in a combined report with a taxpayer (here Wurlitzer) where such inclusion, in the discretion of the Tax Commission, was determined to be necessary properly to reflect tax liability of the taxpayer because either: “ (1) of intercompany transactions, or (2) an agreement, understanding or arrangement whereby the activities, business, income or capital of the taxpayers are improperly or inaccurately reflected.” The Tax Commission asserts authority to require a combined report whenever there are intercompany transactions if such transactions result in what it determines to be an inaccurate reflection of the entire net income of the taxpayer. The taxpayer here, on the other hand, contends that there is here no basis on this record for a finding of such “inaccurate reflection” and that such authority exists only if the intercompany transactions are shown to be unfair.
Wurlitzer was incorporated in the State of Ohio in 1890 and has been doing business in New York since 1909. Acceptance was incorporated in the State of Delaware in 1957 and takes the position that it has never done business in the State of New York.[1] Acceptance was formed by Wurlitzer as a wholly-owned subsidiary for the business purpose of purchasing the retail installment receivables from its parent corporation. The Tax Commission found that a ‘ ‘ company which deals exclusively in receivables, especially secured receivables, is considered to be a better risk than a manufacturing company. Banks are generally willing to lend a company of this type $3 for each $1 of net worth while they are generally willing to lend a manufacturer only $.50 for each $1 of net worth. * * * The establishment of [Acceptance] permits [Wurlitzer] to immediately convert its retail installment receivables to cash and *108 permits the use of its working capital in the expansion of its manufacturing operation. ’ ’
The determination of the Tax Commission included no finding that the intercompany transactions between Wurlitzer and Acceptance were not conducted for reasonable consideration on reasonable terms or that they were otherwise in any way unfair or at figures different from those which would have obtained in arm’s length transactions between strangers. There was no finding that Acceptance was doing business in New York State.
The Tax Commission concluded, however, that Acceptance was “in substance merely the finance department of the unitary business conducted by [Wurlitzer] ”, and accordingly affirmed the computation of Wurlitzer’s tax liability on the basis of a combined report of Wurlitzer and Acceptance.
In this article 78 proceeding the Appellate Division, Third Department, in confirming the determination of the Tax Commission, concluded that the record “clearly shows that the purpose of subdivisions 4 and 5 of section 211 is to prevent the distortion of the net income of a taxpayer. Such distortion, so as to inaccurately reflect the taxpayer’s entire net income, can occur either through intercompany transactions or an unfair agreement”. (42 A D 2d 247, at p. 250; emphasis added.) The Appellate Division continued, “ The key finding made by the commission, which is dispositive of the case, is that [Acceptance] had no separate corporate autonomy and was, in reality, merely the finance department of a unitary business, Wurlitzer ”.
The Tax Commission made no such finding nor did it, as did the Appellate Division, proceed on any theory of piercing the corporate veil or of “the fiction of a corporate shell”. The Tax Commission recognized and accepted the separate corporate identities of both Wurlitzer and Acceptance,[2] and acknowledged *109 that there was a valid business purpose entirely independent of tax considerations for the separate and distinct corporate identities. Thus, the basis on which the Appellate Division supported the determination was quite different from that relied on by the Commission.
First, I would note that ‘‘ a reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.” (Securities Comm. v. Chenery Corp., 332 U. S. 194, 196; cited with approval, Matter of Barry v. O’Connell, 303 N. Y. 46, 50-51.) The decision to require a combined return here was based on the exercise of a discretion vested only in the Tax Commission. Thus, being a determination which the administrative agency alone was authorized to make, it must be sustained, if at all, on the grounds relied on by the Tax Commission rather than on any alternative basis invoked at the Appellate Division.[3]
I turn then to the determination of the Tax Commission. With full recognition of the weight to be attached to the interpretation of a statutory provision by the administrative agency charged with responsibility for its administration, I cannot con- *110 elude that subdivision 4 of section 211 can be read to authorize the result the Tax Commission would reach on this record.[4]
In my view, to include the income of a foreign corporation not doing business in New York in that of a New York corporate taxpayer it must be shown that such inclusion is reasonably required, as the Appellate Division wrote, ‘ ‘ to prevent the distortion of the net income of a taxpayer * * * so as to inaccurately reflect the taxpayer’s entire net income ” (again my emphasis).
[1] ‘ Entire net income ” is a term of art, defined in subdivision 9 of section 208 of the Tax Law, meaning a corporation’s total net income from all sources and [1] ‘ presumably the same as the entire taxable income which the taxpayer is required to report to the United States treasury department ”. During the years in question Wurlitzer’s Federal net income did not include income of Acceptance since the Federal taxing authorities recognized the separate corporate identities of the two taxpayers. Additionally the section 208 (subd. 9, par. [a], cl. [1]) definition expressly excludes ‘ ‘ income, gains and losses from subsidiary capital ’ ’.
The understandable purpose of subdivisions 4 and 5 of section 211 was to enable the Tax Commission to deal with attempts on the part of a New York corporate taxpayer and its related non-New York corporate subsidiary by accounting manipulation and calculated intercorporate maneuvering to distort the real income received by the New York taxpayer. By resort to the authority under these sections the New York taxpayer could be taxed on the basis of the net income it would have had had it been dealing with outsiders at arm’s length. The Tax Commission was thus given two weapons to prevent engineered and *111 unfair distortion of income — subdivision 5 of section 211 authorized corrective adjustment of individual items by reallocation of income and deductions; subdivision 4 authorized a consolidated return where the number or complexity of unfair individual items made the use of subdivision 5 inappropriate. The use of either weapon may be invoked only on a finding of unfair distortion. The Tax Commission made no such predicate finding in this case.
H, as urged by the Tax Commission, a combined report may be required by the Tax Commission wherever there are found to be “ inter-company transactions ” without more (a normal situation with respect to any parent company and its corporate subsidiary), there would appear to be no obstacle or hindrance to the exercise by the Tax Commission, in its discretion, of authority to require the filing of a combined report on the part of any New York corporation and its non-New York corporate subsidiary. It is no answer that in practice the Tax Commission might choose not to do so. Nor does the brief submitted on behalf of the Tax Commission suggest any boundaries on the authority it claims.
The history of these statutory provisions confirms the conclusion that they focus on unfair distortion of income, not merely on intercompany corporate relationship without more. Subdivision 9 of section 211 was added to the Tax Law by chapter 640 of the Laws of 1920. It provided that where both parent and subsidiary were liable to file New York reports the Tax Commission could require them to file a consolidated report. In People ex rel. Studebaker Corp. v. Gilchrist (244 N. Y. 114) we held that this statute did not give the Tax Commission authority to require a consolidated report where one of the related companies was not otherwise required to report. Wurlitzer and Acceptance could not have been required to file a combined report under that statute.
Chapter 322 of the Laws of 1925 deleted the requirement that each of the related companies be subject to the reporting obligation, but limited the Tax Commission’s authority to require a consolidated return where ‘ ‘ any arrangement exists in such a manner as to improperly reflect the business done, the segregable assets or the entire net income earned from business done in this state ” (emphasis added). This authority was *112 granted “to equitably adjust the tax”. The statute was addressed to situations in which there was an improper reflection of income and a consequent distortion of the tax liability of the reporting corporation.
By chapter 415 of the Laws of 1944, the consolidated report provision of former subdivision 9 was separated into two essentially parallel subdivisions, substantially the present subdivisions 4 and 5. There is nothing to suggest that this new and altered formulation was intended to alter the purpose of the provisions or to expand the authority of the Tax Commission. To the contrary the meager legislative history accords with the view that no substantive change was intended; only the tools were sharpened.
I am accordingly persuaded that the authority of the Tax Commission to require combined returns from a New York corporate taxpayer and its non-New York corporate subsidiary extends only to situations in which it is properly found that in consequence of unfair and manipulative intercorporate transactions the net income of the New York corporate taxpayer is improperly distorted. Ours is not a unitary tax system in which corporate identity is ignored. Additionally I note that otherwise to construe the statute would be to raise serious constitutional questions as to the power of the Tax Commission to impose a privilege type franchise tax on a foreign corporation exclusively engaged in interstate commerce.
In this case the Tax Commission has itself found a valid business purpose, independent of tax considerations, for the formation by Wurlitzer of its corporate subsidiary, Acceptance, and there is no finding that the intercorporate transactions between them were unfair or unreasonable or that in consequence thereof there has been a distortion of the entire net income of Wurlitzer.
Accordingly, I would reverse the order of the Appellate Division and annul the order of the State Tax Commission.
Chief Judge Bbeitel and Judges Gabbielli and Wachtleb concur with Judge Stevens ; Judge Jones dissents and votes to reverse in a separate opinion in which Judges .Tasen and Babin concur.
Judgment affirmed, with costs.

. I find no necessary implication to the contrary in the finding of the Tax Commission (said now by Wurlitzer to be inaccurate) that all the activities of Acceptance are performed by employees or officers of Wurlitzer. This finding is not accompanied by any finding that such activities take place within the State of New York. Indeed the Tax Commission recognized that Wurlitzer has divisions spread over continental United States.

. The assertion of tax liability under the combined report- provision was necessarily predicated on the separate existence of two corporations for franchise tax purposes. As Judge Cabdozo wrote in People ex rel. Studebaker Corp. v. Gilchrist (244 N. Y. 114, 123-124) concerning a. predecessor of the combined reporting provision: “ The statute in this paragraph postulates the existence of separate corporations, each of them conducting a business of its own.”

. I would note in passing that I would not find here the predicate, were I to reach that point, for piercing the corporate veil. New York has generally recognized that a subsidiary corporation is a distinct corporate entity (e.g., Berkey v. Third Ave. Ry. Co., 244 N. Y. 84). Wurlitzer and Acceptance have been held to be separate corporate entities (Matter of Gibraltar Amusements, 291 F. 2d 22, cert. den. 368 U. S. 925). The existence of otherwise separate corporate entities is ignored by the courts in certain exceptions to the general rule. No such exception is applicable here, however. Thus under the rule of Lowendahl v. Baltimore & Ohio R. R. Co. (247 App. Div. 144, affd. 272 N. Y. 360), for instance, there was here no finding of control by Wurlitzer to the point of complete domination of Acceptance used to commit a fraud or wrong or to perpetrate the violation of a statutory or other positive legal duty or of a dishonest or unjust act. There is here no predicate finding that the separate corporate existence of Acceptance was employed by Wurlitzer for fraudulent Or illegal purposes, and, of course, this was not the view taken by the Tax Commission.

. The argument on behalf of the Tax Commission that its interpretation of subdivision 4 of section 211 must be deemed to have been accepted by the Legislature because there has been no significant amendment of the statutory provision under which it was made since 1944, is not persuasive. There is cited to us no instance of the application of the interpretation for which the Tax Commission now contends on which such a constructional argument could be grounded. So far as appears this is the first instance in which the Tax Commission has invoked the interpretation on which it now rules. Our attention is invited to no reported case in which the arguments presently advanced on behalf of the Tax Commission have received judicial approval.